Andrew M. Calamari
Sanjay Wadhwa
Charles D. Riely
Jack Kaufman
John Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0106 (Kaufman)
Email: KaufmanJa@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>EDWIN RUH JR and PAN ASIA CHINA COMMERCE CORP., INC.<br><br>Defendants. | 16 Civ.    (  )<br>ECF Case<br><br><br>COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Edwin Ruh Jr. ("Ruh") and Pan Asia China Commerce Corp., Inc. ("PAC-3") (collectively, "Defendants"), alleges as follows:

### SUMMARY OF ALLEGATIONS

1. This case involves Defendants' fraudulent offering of an investment fund called PAC-3 Film Fund LLC, ("PAC-3 Film Fund"). Ruh established the PAC-3 Film Fund to make investments in a film financing deal between a well-known film studio ("Film Studio A") and a film financing firm ("Financing Firm A").

2.      Pursuant to its deal with Film Studio A, Financing Firm A agreed to provide Film Studio A with 25 percent of Film Studio A's motion picture financing for the next five years (the "Film Deal"). As part of the fund raising effort, Financing Firm A invited PAC-3 Film Fund to assist in raising money for the deal, but subject to a number of specific limitations that Financing Firm A communicated to Ruh.

3.      Notwithstanding specific contrary instructions from Financing Firm A, beginning in approximately July 2013, either directly or through intermediaries, Ruh and PAC-3 created and caused to be distributed to potential investors various versions of an offering document titled "confidential executive summary" (collectively, the "Offering Document"). The Offering Document contained several material false and/or misleading statements regarding the nature of the PAC-3 Film Fund offering and misleadingly displayed Film Studio A's logo on its first page, contrary to the express instruction from Financing Firm A that it was not to do so.

4.      The Offering Document stated that PAC-3 had formed the PAC-3 Film Fund to raise $550 million to invest exclusively in a fund managed by Financing Firm A ("Financing Firm A Film Fund"). Certain versions of the Offering Document falsely claimed that: (1) the PAC-3 Film Fund offering was "in Co-Operation with . . . [Film Studio A]"; (2) "PAC-3 has secured a [third-party] Financial guarantee with the capacity to guarantee amounts that exceeds $728,750,000"; (3) PAC-3 "will supply directly [through a syndicate of insurance companies] to the investor an insurance guarantee that protects both principal and 6.5% [annual return] for five years" and a "Financial Guarantee provided by a syndication of insurers including but not limited too [sic], AmTrust, Price Waterhouse, XL Re, Excess Re, Munich Re, Lloyds and others" (with whom PAC-3 purported to have "Key Relationships"); and (4) Film Studio A "has an implied corporate guarantee for the first line of $300m."

5.  In fact, these statements were false. Contrary to the above Offering Document claims, the offering was not "in cooperation with" Film Studio A, which had not authorized the use of its name or logo on the Offering Document. Moreover, PAC-3 did not have "key relationships" with major insurance companies and had not "secured" a third-party "[f]inancial guarantee" for the deal. Finally, Film Studio A had made no "implied corporate guarantee" regarding the Film Deal.

## VIOLATIONS

6.  By virtue of the conduct alleged herein, each of the Defendants, directly or indirectly, have engaged and is engaging in transactions, acts, practices and courses of business that constitute violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and § 77q(a)(3)].

7.  Unless the Defendants are permanently restrained and enjoined, they will again engage in the acts, practices, transactions and courses of business set forth in this complaint and in acts, practices, transactions and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8.  The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] seeking to restrain and permanently enjoin the Defendants from engaging in the acts, practices, transactions and courses of business alleged herein.

9.  The Commission also seeks a judgment imposing civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections

20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)].

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)]. Certain of the events constituting or giving rise to the alleged violations occurred in the Southern District of New York. For example, Defendants provided the Offering Document to persons located in Manhattan and Westchester County, New York.

12. In connection with the conduct alleged in this complaint, Defendants, directly or indirectly, have made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of a national securities exchange.

## DEFENDANTS

13. **Ruh**, age 63, of Point Pleasant Beach, NJ, is the sole owner and manager of PAC-3.

14. **PAC-3**, a Delaware corporation headquartered in New York, New York, is solely owned and managed by Ruh. PAC-3's only significant activity in 2013 and 2014 appears to have been marketing the PAC-3 Film Fund.

## FACTS

15. On July 14, 2012, Film Studio A and Financing Firm A executed the Film Deal. For approximately the next two years, Financing Firm A attempted unsuccessfully to raise money to fund the Film Deal through the Financing Firm A Film Fund.

16. In July 2013, as part of Financing Firm A's fundraising effort, Financing Firm A agreed informally to permit PAC-3 to participate in raising money for the Film Deal. Ruh then created the PAC-3 Film Fund for that purpose – to invest in the Financing Firm A Film Fund.

17.     The Financing Firm A Film Fund essentially promised investors an 11.5 percent yearly return, plus participation in any additional profits that the fund earned through its Film Deal with Film Studio A. Ruh's PAC-3 Film Fund, in turn, essentially promised a 6.5 percent per annum return, plus participation in any additional profits that Financing Firm A Film Fund obtained through the Film Deal. The PAC-3 Fund purportedly intended to use the 5 percent difference between the two funds' promised annual returns to purchase third-party "reinsurance" guaranteeing repayment of principal and guaranteed 6.5 percent annual interest to its investors.

18.     On July 17, 2013, Financing Firm A's CEO ("Individual A") emailed Ruh a written "executive summary" outlining the basic terms of the Film Deal and a copy of the Financing Firm A Film Fund offering. On August 16, 2013, an individual working with Ruh ("Individual B") emailed Individual A a draft 5 page PowerPoint document titled PAC-3 "Confidential Executive Summary" ("Executive Summary"), which described the PAC-3 Fund's own proposed offering related to the Film Deal. The draft PAC-3 Executive Summary included the Film Studio A logo on the top of each page, and stated that the offering was "[i]n Co-Operation with [Film Studio A] and [Financing Firm A]." In addition, the draft PAC-3 Executive Summary prominently and repeatedly stated that the PAC-3 Fund would obtain "reinsurance" that would act as a "guarantee to investors" and stated that, consequently, there would be "[n]o risk at anytime [sic] to principal and/or interest."

19.     Approximately an hour later, Individual A sent Ruh and Individual B an email that included the following requested changes to the PAC-3 Executive Summary. First, Individual A requested that they "remove [the Film Studio A] logo and 'In Co-Operation with [Film Studio A].'" Individual A explained that there "[c]annot [be] any inference the studio is

5

involved in the offering" and noted that "what we have is a signed agreement to co-finance all their movies for the next 5 years."

20. Individual A's email also noted that the PowerPoint should not be sent out until the guarantees referenced in the document were finalized. Specifically, the email noted: "AFTER WE RECEIVE THE FINAL AND APPROVED COPY OF THE LANGUAGE OF THE GUARANTEE, WE WILL HELP YOU QUICKLY COMPLETE THE POWER POINT." (All caps in original.) Individual A also stated in the email, "IN THE MEANTIME, IT CANNOT BE SENT TO ANY THIRD PARTIES." (All caps in original.)

21. Notwithstanding Individual A's requests, and without his knowledge, Ruh proceeded to cause the distribution of a 64-page PAC-3 Offering Document to approximately six financing intermediaries, who, in turn, distributed the Offering Document to at least 4 potential investors.

22. Directly contrary to Individual A's request, the 64-page Offering Document continued to display the Film Studio A logo on its first page, and to state that the PAC-3 Fund "offering" was "[i]n Co-Operation with . . . [Film Studio A]."

23. In addition, the Offering Document continued to describe the supposed "insurance guarantee," even though it had not yet been obtained, and the resultant "No Risk investment for all parties." Specifically, the Offering Document stated: "PAC-3 will supply directly to the investor an insurance guarantee that protects both principal and 6.5% for five years." On another page, the Offering Document also stated: "[f]inancial [g]uarantee provided by a syndication of insurers including but not limited too [sic], AmTrust, Price Waterhouse, XL Re, Excess Re, Munich Re, Lloyds and others." This page also referred to "Pan Asia China Commerce Corp – Key Relationships" and listed

6

below that statement thirteen major corporations, including "Lloyds of London," "Price Waterhouse," and "Munich Re."

24. Another version of the Offering Document stated that PAC-3 "has secured a Financial guarantee with the capacity to guarantee amounts that exceeds $728,750,000." The Offering Document stated that: "[t]his includes the $550M in principal, 6.5% interest and operational investment . . . Financial Guarantee Underwriters includes but not limited too [sic]: Excess Reinsurance, Inc. Munich Re Price Waterhouse Lloyds of London XL Reinsurance ACE Insured AmTrust." Finally, this version of the Offering Document stated that: "[i]nvestors are 100% collateralized in both principal and interest for the five year term . . . Claims payable immediately if the fund defaults . . . No Risk investment for all parties[.]"

25. In fact, PAC-3 had secured no such financial guarantee. As Ruh knew at the time, although PAC-3 had an understanding with a small reinsurance broker – which had agreed to attempt to obtain such guarantees after certain conditions had been met – PAC-3 had not yet secured any such guarantees, and it did not have direct relationships with the insurance companies listed in the Offering Document.

26. In addition to the above false and misleading statements, one of the versions of the Offering Document claimed that "[Film Studio A] has an implied corporate guarantee for first line of $300M"; and that a $250,000,000 "revolving Credit Facility" from several "major banks" was "back-stopped by payment from [Film Studio A]." One Offering Document also falsely stated that "[PAC-3] has signed a five year contract with [Financing Firm A] to supply $300 Million of funding to Film Studio A. . ."

7

27. Ruh knew that Film Studio A had not agreed to provide any type of corporate guarantee for the investments in the Film Deal.

28. Ruh never executed any contract on behalf of PAC-3 with Financing Firm A.

## CLAIM FOR RELIEF
### Violations of Section 17(a)(1) and 17(a)(3) of the Securities Act
### (Both Defendants)

29. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 28 of this Complaint.

30. From in or about July 2013 through the present, Defendants, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the offer or sale of securities, have: (a) employed, and are employing, devices, schemes and artifices to defraud; (b) obtained, and are obtaining, money or property by means of untrue statements of material fact, or have omitted, and are omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and are engaging, in transactions, acts, practices and courses of business which would operate as a fraud or deceit upon the purchaser.

31. By reason of foregoing, Defendants, directly or indirectly, singly or in concert, have violated, are violating, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

A Judgment permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

### II.

A Judgment ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

### III.

Such other and further relief as this Court deems just and proper.

Dated:        August 9, 2016
              New York, New York

By: _____

Andrew M. Calamari
Sanjay Wadhwa
Charles D. Riely
Jack Kaufman
John Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0106 (Kaufman)
Email: KaufmanJa@sec.gov